1   Steve W. Berman
    *steve@hbsslaw.com*
2   Thomas E. Loeser (Cal. Bar No. 202724)
    *toml@hbsslaw.com*
3   HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
4   Seattle, WA 98101
    Telephone: (206) 623-7292
5   Facsimile: (206) 623-0594
6
7   Peter B. Fredman (Cal. Bar No. 189097)
    *peter@peterfredmanlaw.com*
8   LAW OFFICE OF PETER FREDMAN
    125 University Ave, Suite 102
9   Berkeley, CA 94710
    Telephone: (510) 868-2626
10  Facsimile: (510) 868-2627
11
12  Attorney for Plaintiff Louis Feinstein

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16  | LOUIS FEINSTEIN, individually and on | Case No. 2:12-cv-00147-JFW-SSx |
17  | behalf of others similarly situated, | |
    | | **PLAINTIFF'S OPPOSITION TO** |
18  | Plaintiff, | **MOTION TO DISMISS** |
    | | **PURSUANT TO FED. R. CIV. P.** |
19  | v. | **12(b)(6)** |
20  | OCWEN LOAN SERVICING L.L.C., a | Date: April 9, 2012 |
21  | Delaware corporation, | Time: 1:30 p.m. |
    | | Ctrm: 16 |
22  | Defendant. | Judge: Hon. John F. Walter |
23
24
25
26
27
28
    OPPOSITION TO MOTION
    TO DISMISS
    010279-11 507593 V1                          Case No. 2:12-cv-00147-JFW-SSx

1

## TABLE OF CONTENTS

2

<u>Page</u>

3

I.      INTRODUCTION ...................................................................................... 1

4

II.     SUMMARY OF ARGUMENT ................................................................. 2

5

6

III.    ARGUMENT ............................................................................................ 4

7

    A.    Sending the Offer Letter constitutes "debt collection" activity
          under the Rosenthal Act ................................................................... 4

8

9

        1.    Ocwen engaged in "debt collection" under the plain
              language of the Rosenthal Act ............................................... 4

10

11

        2.    The Rosenthal Act covers trial modification and forbearance
              offers ...................................................................................... 4

12

13

        3.    No special exception to the Rosenthal Act applies to loan
              workout offers ......................................................................... 6

14

    B.    Plaintiff states a claim under the UCL .......................................... 10

15

        1.    Plaintiff has standing under the UCL ................................... 10

16

        2.    Plaintiff states claims under the UCL .................................. 15

17

IV.     CONCLUSION ....................................................................................... 18

18

19

20

21

22

23

24

25

26

27

28

- i -

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**CASES**

5

*Argueta v. J.P. Morgan Chase*,
   2011 WL 2619060 (E.D. Cal. June 30, 2011) ...................................... 14

6

7

*Bailey v. Security Nat'l Servicing Corp.*,
   154 F.3d 384 (7th Cir. 1998) .......................................................... 6, 7, 8

8

9

*In re Bank of America Home Affordable Modification Program (HAMP)
   Contract Litig.*,
   2011 WL 2637222 (D. Mass. July 6, 2011) ...................................... 5, 9

10

11

*Bardin v. Daimler Chrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) .......................................................... 17

12

13

*Burton v. Stevedoring Servs. of Am.*,
   196 F.3d 1070 (9th Cir. 1999) ............................................................ 4

14

15

*Californians For Disability Rights v. Mervyn's, LLC*,
   39 Cal. 4th 223 (2006) ...................................................................... 14

16

17

*Catherman v. Credit Bureau of Greater Harrisburg*,
   634 F. Supp. 693 (E.D. Pa. 1986) ..................................................... 15

18

19

*Chao v. Aurora Loan Services, LLC*,
   2011 WL 6963098 (N.D. Cal. Sept. 12, 2011) ............................ 11, 12

20

21

*Clark v. Capital Credit & Collection Servs.*,
   460 F.3d 1162 (9th Cir. 2006) .......................................................... 15

22

23

*Cornejo v. JPMorgan Chase Bank*,
   2011 WL 6149246 (C.D. Cal. Dec. 12, 2011) .................................. 13

24

25

*De Jose v. EMC Mortg. Corp.*,
   2011 WL 1539656 (N.D. Cal. Apr. 18, 2011) .................................. 13

26

27

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ............................... 13, 14

28

- ii -

1
2
*Fireside Bank v. Superior Court*,
  40 Cal. 4th 1069 (2007) ........................................................................... 11

3
4
*Gaudin v. Saxon Mortg. Services, Inc.*,
  2011 WL 5825144 (N.D. Cal. Nov. 17, 2011) ................................... 5, 9

5
6
*Gburek v. Litton Loan Servicing LP*,
  614 F.3d 380 (7th Cir. 2010) ............................................................. 8, 9

7
*Guerrero v. RJM Acquisitions LLC*,
  499 F.3d 926 (9th Cir. 2007) ................................................................. 15

8
9
*Hood v. Santa Barbara Bank & Trust*,
  143 Cal. App. 4th 526 (2006) ................................................................. 11

10
11
*Justo v. Indymac Bancorp*,
  2010 WL 623715 (C.D. Cal. Feb. 19, 2010) ......................................... 14

12
13
*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................... 16

14
15
*Kennedy v. Wells Fargo Bank, N.A.*,
  2011 WL 4526085 (C.D. Cal. Sept. 28, 2011) ............................. 6, 9, 10

16
17
*Komarova v. National Credit Acceptance, Inc.*,
  175 Cal. App. 4th 324 (2009) ................................................................... 4

18
19
*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ..................................................................... 11, 12

20
*Lawther v. OneWest Bank, FSB*,
  2012 WL 298110 (N.D. Cal. Feb. 1, 2012) ........................................... 11

21
22
*Lucia v. Wells Fargo Bank, N.A.*,
  798 F. Supp. 2d 1059 (N.D. Cal. 2011) ......................................... 4, 5, 9

23
24
*Morales v. Chase Home Finance LLC*,
  2011 WL 1670045 (N.D. Cal. Apr. 11, 2011) ............................... 4, 5, 9

25
26
*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ................................................................. 17

27
28
*People v. Overstreet*,
  42 Cal. 3d 891 (1986) ............................................................................... 4

- iii -

*Pinel v. Aurora Loan Services, LLC,*
     2011 WL 3843960 (N.D. Cal. Aug. 29, 2011) ................................................... 11

*Porter v. Fairbanks Capital Corp.,*
     2003 WL 21210115 (N.D. Ill. May 21, 2003) ............................................. 6, 7

*Reyes v. Wells Fargo Bank, N.A.,*
     2011 WL 30759 (N.D. Cal. Jan. 3, 2011) ................................................... *passim*

*Terran v. Kaplan,*
     109 F.3d 1428 (9th Cir. 1997) ........................................................ 3, 15

*In re Tobacco II Cases,*
     46 Cal. 4th 298 (2009) .................................................................. 15

*Troyk v. Farmers Group, Inc.,*
     171 Cal. App. 4th 1305 (2009) ........................................................ 10

*VP Racing Fuels, Inc. v. General Petroleum Corp.,*
     673 F. Supp. 2d 1073 (E.D. Cal. 2009) ................................................ 17

*Walcker v. SN Commercial, LLC,*
     286 Fed. Appx. 455 (9th Cir. 2008) ...................................................... 5

*Wigod vs. Wells Fargo, N.A.,*
     __ F.3d __, 2012 U.S. App. LEXIS 4714 (7th Cir. Mar. 7, 2012) ...................... 5

STATUTES

15 U.S.C. § 1692a ........................................................................ 8

15 U.S.C. § 1692e ........................................................................ 2

Cal. Bus. & Prof. Code § 17200 ...................................................... 2, 3

Cal. Bus. & Prof. Code § 17204 ..................................................... 11, 12

Cal. Civ. Code § 1788.2 ............................................................. 4, 8

Cal. Civ. Code § 1788.17 ............................................................... 2

Cal. Civil Code § 2923.5 .............................................................. 17

- iv -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

This is a straightforward case.  As of 2011, Plaintiff Louis Feinstein ("Plaintiff") had stopped making mortgage payments that he could not afford for a home with a value far less than the mortgage debt owed.  *See* First Amended Complaint ("FAC"), ¶ 13, Fn. 1.  The loan servicer, Defendant Ocwen Loan Servicing, L.L.P. ("Ocwen"), recorded notices of default and sale.  *See id.*  Upon foreclosing the property, Ocwen would be entitled only to the proceeds of the sale and would not be able to collect any additional or past-due payments from Plaintiff. *See* Cal. Civ. Pro. § 580d.

On or about February 11, 2011, prior to the foreclosure, Ocwen sent Plaintiff a letter – attached and incorporated as Exhibit A to the FAC (the "Offer Letter") – that offered to modify Plaintiff's mortgage payment to an affordable amount that would let him keep his home.  *See* FAC, ¶ 14, Ex. A.  In the Offer Letter, Ocwen represented that Plaintiff had been "approved to enter into a trial period plan under the Home Affordable Modification Program [HAMP]." *Id.*  The Offer Letter explained that this was "the first step towards qualifying for more affordable mortgage payments." *Id.*  It promised that "[a]fter all trial period payments are timely made and you have submitted all the required documents, *your mortgage will be permanently modified*." *Id.* (emphasis added).

Ocwen's representations and promises in the Offer Letter were objectively false.  Plaintiff made all trial period payments and submitted all documents requested of him. *See id.*, ¶¶ 14-16.  But Ocwen did not give Plaintiff a permanent loan modification.  *See id.*  Instead, it kept his additional "trial period" payments and foreclosed on his home anyway.  *See id.*

- 1 -

Ocwen's representations and promises were also false because they did not accurately reflect Ocwen's intentions or policies.  *See id.*, ¶ 17.  Ocwen facially "offered" Plaintiff a HAMP modification subject only to two conditions under Plaintiff's control.  But the offer was, in fact, subject to numerous undisclosed criteria and conditions, including the subjective discretion of Ocwen and the underlying third-party mortgage investors.  *See id.*

Prior to receiving the Offer Letter, Plaintiff was objectively resigned to losing his financially underwater home.  *See id.*, ¶¶ 13, 18.  He would not have sent Ocwen a single additional dollar but for his reliance on the accuracy of Ocwen's representations in the Offer Letter.  *See id.*, ¶¶ 14, 18.  Ocwen offered a purported opportunity for Plaintiff to keep his home by modifying the terms of his mortgage loan to make the payments more affordable.  That offer was illusory and little more than a well-orchestrated scheme by Ocwen to dupe underwater and defaulted borrowers into paying Ocwen money prior to foreclosure that Ocwen would otherwise have had no ability to collect.  *See id.*, ¶ 18.

## II.    SUMMARY OF ARGUMENT

The FAC readily states claims under California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.* ("Rosenthal Act"), and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL").  Specifically, the misrepresentations in the Offer Letter constitute "false, deceptive, or misleading representation or means in connection with the collection of any debt," as prohibited by the federal Fair Debt Collection Act ("FDCPA").  The Rosenthal Act incorporates the FDCPA and is violated by any representation that is likely to mislead the "least sophisticated debtor."  15 U.S.C. § 1692e; Cal. Civ. Code §

- 2 -

1788.17; *Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir. 1997).  Because the FAC states a Rosenthal Act violation, a claim for "unlawful" business practices under the UCL is stated as a matter of law.  Cal. Bus. & Prof. Code § 17200.  Further, the FAC clearly describes Ocwen's practices that were both "unfair" and "fraudulent," and therefore prohibited under the UCL.

There is no merit to Ocwen's assertion that the Offer Letter is outside the scope of the Rosenthal Act because it was not sent "in connection with the collection of any debt."  In the first version of Ocwen's Motion, the argument was based entirely on a non-citable unpublished decision (pertaining to the FDCPA, not Rosenthal Act).  After Plaintiff notified Ocwen of its improper citation, Ocwen excised it, but astonishingly left the argument, now devoid of any convincing legal support.[1]  Ocwen's suggestion that loan servicer efforts to obtain loan workout agreements are exempt from the Rosenthal Act is baseless and illogical because virtually all debt collection can be characterized as debt workout efforts.  Ocwen's suggestion that the Offer Letter should be considered something other than debt collection activity (*e.g.*, the equivalent to sending an informational video) is belied by the fact that the Offer Letter plainly seeks payments towards a delinquent debt and that is what it caused:  In reliance on the misrepresentations in the Offer Letter, Plaintiff made payments on a delinquent debt that he otherwise would not have made and that Ocwen otherwise could not have and would not have collected.

---

[1] Ocwen deleted the improper citation from its papers by virtue of the Notice of Errata filed February 21, 2012.

- 3 -

### III.   ARGUMENT

**A.   Sending the Offer Letter constitutes "debt collection" activity under the Rosenthal Act**

**1.   Ocwen engaged in "debt collection" under the plain language of the Rosenthal Act**

The language of the Rosenthal Act is clear.  It defines the term "debt" to mean "money … which is due or owing or alleged to be due or owing from a natural person to another person."  Cal. Civ. Code § 1788.2.  The term "debt collection" means "any act or practice in connection with the collection of consumer debts."  *Id.*

The conduct alleged here consisted of falsely promising a delinquent mortgage debtor a permanent loan modification if he made three "trial" payments towards the delinquency.  *See* FAC, ¶¶ 2, 14, Ex. A.  It was "debt collection" because it was "in connection with the collection" of the consumer's mortgage debt.  "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it."  *People v. Overstreet,* 42 Cal. 3d 891, 895 (1986); *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1072 (9th Cir. 1999) (*accord*).  Further, the Rosenthal Act must "be interpreted broadly in order to effectuate its purpose," which explicitly includes protecting debtors from the use of false or misleading statements to collect a debt.  *Komarova v. National Credit Acceptance, Inc.,* 175 Cal. App. 4th 324, 340 (2009).

**2.   The Rosenthal Act covers trial modification and forbearance offers**

It is firmly established under California law that the Rosenthal Act covers trial modification and forbearance offers.  *Lucia v. Wells Fargo Bank, N.A.,* 798 F. Supp. 2d 1059, 1071 (N.D. Cal. 2011) (HAMP trial period offer constitutes "debt collection" under the Rosenthal Act); *Morales v. Chase Home Finance LLC*, 2011

- 4 -

1  WL 1670045, *9 (N.D. Cal. Apr. 11, 2011) (same); *Gaudin v. Saxon Mortg.*

2  *Services, Inc.,* 2011 WL 5825144, *5 (N.D. Cal. Nov. 17, 2011) (same); *Reyes v.*

3  *Wells Fargo Bank, N.A.,* 2011 WL 30759, *19 (N.D. Cal. Jan. 3, 2011) (forbearance

4  offer constitutes "debt collection" under the Rosenthal Act); *In re Bank of America*

5  *Home Affordable Modification Program (HAMP) Contract Litig.,* 2011 WL

6  2637222, *6 (D. Mass. July 6, 2011) (HAMP TPP offers covered by the Rosenthal

7  Act).[2]  The parameters are well defined.  While merely foreclosing on a deed of trust

8  is not "debt collection" under the Rosenthal Act, debt collection activities "beyond

9  the scope of the ordinary foreclosure process" are covered.  *See Reyes*, 2011 WL

10  30759, at *19.  Similarly, although purely informational communications are not

11  considered "debt collection" activities, letters seeking trial payments in lieu of

12  foreclosure "are sufficient to demonstrate a demand for payment in support of a

13  Rosenthal Act claim."  *See Lucia*, 798 F. Supp. 2d at 1071, distinguishing *Walcker v.*

14  *SN Commercial, LLC*, 286 Fed. Appx. 455, 457 (9th Cir. 2008) (unpublished).[3]

---

[2] The HAMP Trial Payment Plan ("TPP") offers at issue in *Lucia*, *Morales*, and *Gaudin* are contract-like documents, of a completely different form than the letter at issue here.  Accordingly, the focus of those cases is whether the TPP itself is, or appears to be, a binding contract.  *Lucia/Morales*, decided by the same judge, dismissed the complaint because it found that the TPPs were neither contracts nor deceptive under the Rosenthal Act (though covered by the Act).  *Gaudin* found that plaintiff stated a claim on both counts, as did the Seventh Circuit recently in *Wigod vs. Wells Fargo, N.A.*, _ F.3d __, 2012 U.S. App. LEXIS 4714 (7th Cir. Mar. 7, 2012).  *Reyes*, which involved a letter enclosing a forbearance offer, found that no binding contract was created, but plaintiffs did state a claim for deceptive practices under the Rosenthal Act and did have standing to pursue their claim under the UCL.

[3] *Lucia* thus makes clear that Ocwen's significant reliance on *Walcker* throughout its motion is inapposite.

- 5 -

1

2

### 3.   No special exception to the Rosenthal Act applies to loan workout offers

#### a.   Ocwen's argument for a special exception relied primarily on a non-citable, unpublished case

Ocwen's argument that a special exception applies to loan workout offers is legally adrift.  The argument was based more or less exclusively on a non-citable, unpublished Ninth Circuit opinion from 2001 called *Santoro.  See* Ninth Circuit Rule 36-3(c).  As amended, Ocwen's brief cites three cases for the proposition that "… courts – including *in the Ninth Circuit* – have *repeatedly* held that offers to restructure a mortgage debt or to create a workout plan are not 'debt collection' efforts covered by the FDCPA or RFDCPA."  *See* Notice of Errata (Dkt. #17) at 2:3-9.[4]  But Ocwen's purported authorities are (1) distinguishable; (2) non-binding and/or unpublished; and (3) not nearly elastic enough to apply to the facts at issue here.  The cases are *Kennedy v. Wells Fargo Bank, N.A.,* 2011 WL 4526085, *3 (C.D. Cal. Sept. 28, 2011), *Bailey v. Security Nat'l Servicing Corp.,* 154 F.3d 384, 388-89 (7th Cir. 1998), and *Porter v. Fairbanks Capital Corp.,* 2003 WL 21210115, *3 (N.D. Ill. May 21, 2003), none of which remotely support dismissal here.

#### b.   *Porter* does not support Ocwen's argument

*Porter* is plainly unhelpful to Ocwen.  It involved two different communications:  first, an informational videotape that a mortgage servicer sent to a defaulted debtor plaintiff; and second, monthly statements of the amount owed.  *See id* at *1.  The plaintiff alleged one count in violation of the FDCPA for each

---

[4]Emphasis added.  Defendant's first version of its motion stated:  "…courts – *including the Ninth Circuit* – have repeatedly held that offers to restructure a mortgage debt or to create a workout plan are not 'debt collection' efforts covered by the FDCPA or RFDCPA…"  *See* Def's Mtn. at 3:6-8 (emphasis added).  Without *Santoro,* Ocwen can offer no binding or on-point authority for its argument.

- 6 -

communication. *See id.* at \*2. The court granted the defendant's motion to dismiss the count concerning the videotape only. *See id.* at \*9. The court noted that the videotape itself could not "be construed as a communication in connection with the collection of debt" because it did "not provide any information at all about plaintiff's particular loan status," rather, "simply encourage[d] borrowers to contact [the servicer] and suggests possible loan workout options." *See id.* at \*7-8.

But the *Porter* court rejected the defendant's argument that the monthly statements did not demand payment. *See id.* at 9-11. It held that the statements "clearly refer to 'total late charges due' and therefore can be construed as communications in connection with the collection of a debt." *Id.* at \*10. Here, likewise, the communication was specific to Plaintiff's debt, and identified amounts that it sought to have him pay towards his past due debt. *See* Offer Letter.

### c.   *Bailey* does not support Ocwen's argument

The Seventh Circuit case, *Bailey,* is distinguishable. It did not involve a communication sent to borrowers who were in default at the time of the communication and it concerned an exemption in the FDCPA which does not exist in the Rosenthal Act.

At the time of the communication in *Bailey*, the borrowers were current on a modified mortgage. Though the borrowers had previously been in default, they subsequently entered into a "forbearance agreement" that cured the default and superseded their defaulted mortgage. 154 F.3d at 386. Thereafter – that is, after the loan was brought current by the forbearance agreement – the *Bailey* defendant took over the loan servicing, and sent the borrowers a letter informing them of their upcoming payment schedule under the *new* agreement. *Id.* Because this letter failed

- 7 -

to include routine written disclosures the FDCPA requires, the borrowers filed a dubious unfair debt collection lawsuit. *Id.*

The *Bailey* court held that the defendant was not a "debt collector" subject to FDCPA because the debt *was not in default when defendant obtained it.* 154 F.3d at 387-388. The FDCPA (but not the Rosenthal Act) exempts from its definition of "debt collector" persons who obtained the debt before it went into default. *See* 15 U.S.C. § 1692a(6)(F)(iii).[5] *Bailey* held that "the plain meaning of the [FDCPA] statute require[s] that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current." 154 F.3d at 387. Because the Rosenthal Act does not have the exemption at issue in *Bailey*, however, *Bailey* is wholly unhelpful to Ocwen.[6]

The facts (that the debt was not in default) and the law (the FDCPA exemption) at issue in *Bailey* thus render *Bailey* inapplicable here. Moreover, the Seventh Circuit has since clarified that the FDCPA *does apply* to loan workout efforts. *See Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384-385 (7th Cir. 2010). Specifically, the Court of Appeals held that the FDCPA covered a mortgage servicer letter seeking financial information from delinquent borrowers and

---

[5] As many courts have recognized, the definition of "debt collector" is broader under the Rosenthal Act. *c/f* 15 U.S.C. § 1692a(6) to Cal. Civ. Code § 1788.2(c); *see Reyes,* 2011 WL 30759, at 19 (compiling cases).

[6] In *dicta* in the last paragraph, *Bailey* also noted that the letter was not really "a communication related to the collection of a debt" because it was merely informing the borrower prospectively of current payments coming due under a new agreement. *Id.* at 388-389. This also has no bearing here because the Offer Letter was not merely providing such information. Plainly it was seeking payment on the defaulted mortgage debt. *See* Offer Letter.

- 8 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

encouraging them to apply for workout options, even though the letter did not contain a request or demand for payment. *See id* at 381-383. Simply put, an "offer to discuss … repayment options … qualifies as a communication in connection with an attempt to collect a debt." *Id.* at 386.

### d. *Kennedy* does not support Ocwen's argument

The *Kennedy* opinion does not address workout offer communications like the Offer Letter. 2011 WL 4526085. In *Kennedy,* the borrower completed a HAMP TPP agreement (as in *Lucia*, *Morales*, and *Gaudin, see supra*, footnote 2), but the permanent modification offer that followed had a substantially higher monthly payment than the trial plan. *Id.* at *1. The borrower complained to the defendant, and defendant's representative told her not to sign the permanent modification agreement in the meantime. *See id.* The defendant later denied the HAMP permanent modification based on the borrower's failure to sign, then gave her a non-HAMP modification that had less advantageous terms. *See id.*

On defendant's motion to dismiss, the *Kennedy* court found that the borrower stated claims against the defendant for breach of contract, promissory estoppel, and negligence. *See id.* at *4-5. But it also found that "[c]ontact by a lender or loan servicer for the purpose of restructuring payments on a debt is not 'collection of a debt' for the purposes of the FDCPA *when the lender or servicer does not demand payment for past due amounts owed.*" *Id.* at *8-9. While Plaintiff contends that this conclusion is wrong and contrary to legion subsequent state and federal cases,[7] the

---

[7]*See, e.g., Lucia,* 798 F. Supp. 2d at 1071; *Morales*, 2011 WL 1670045, at *9; *Gaudin,* 2011 WL 5825144, at *5; *Reyes*, 2011 WL 30759, at *19; *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*, 2011 WL 2637222, at *6.

- 9 -

case is clearly distinguishable and unhelpful here because Ocwen *did demand payments for past due amounts owed*.  *See* Offer Letter.

The court further held:  "And even if the loan medication discussions alleged in the complaint constituted 'collection of a debt,' Plaintiff has not alleged anything said by Defendant that can reasonably be construed as false, deceptive, misleading or any practice that could be reasonably labeled unfair or unconscionable."  Again, in contrast, the FAC here plainly and specifically alleges the false, deceptive and misleading communications and explains why they were so.  FAC, ¶¶ 2-5, 17-18, 28. Ocwen promised a workout offer to get Plaintiff to make payments on a delinquent debt.  Ocwen sent Plaintiff a letter asking for trial payments to be applied towards the delinquent debt, and representing that "[a]fter all trial period payments are timely made and you have submitted all the required documents, *your mortgage will be permanently modified*."  *See* Offer Letter (emphasis added).  The representation was not true, and concealed the true nature and undisclosed conditions of the offer. These allegations are not comparable to the innocently botched attempt at completing a permanent loan modification at issue in *Kennedy*, rather they plead patently deceptive debt collection practices under the Rosenthal Act.

**B.     Plaintiff states a claim under the UCL**

**1.     Plaintiff has standing under the UCL**

Plaintiff has standing under the UCL because, as a result of the misrepresentations in the Offer Letter, Plaintiff sent Ocwen money that he would not have otherwise sent.  "An injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing."  *Troyk v. Farmers Group, Inc.,* 171 Cal. App. 4th 1305, 1346-1347 (2009).  Under the plain language of

- 10 -

the UCL, payment of a preexisting debt constitutes a loss of "money or property" sufficient to confer standing where, as here, it is the "result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

The fact that Plaintiff owed Ocwen money at the time – the "preexisting debt" rule – is irrelevant to UCL standing.  In *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069, 1090, 1092, fn.9 (2007), for example, the California Supreme Court held that "a post repossession payment against the alleged deficiency" owing on an auto loan conferred UCL standing.  Similarly, in *Hood v. Santa Barbara Bank & Trust,* 143 Cal. App. 4th 526, 533-534, 540 (2006), the appellate court recognized a UCL claim where the defendant had disbursed the plaintiff's tax refund to pay off her preexisting debt to third-party bank pursuant to a cross-collection provision.

Cases specific to deceptive mortgage workout offers all agree that trial or forbearance payments confer UCL standing provided the money was sent as a result of the business practice that is the subject of the UCL claim.  *See Reyes,* 2011 WL 30759, at *21.  In *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, *25 (N.D. Cal. Feb. 1, 2012), for example, the court held that "plaintiffs who make loan payments as the result of behavior claimed to have violated the UCL have standing to pursue such a claim."  *See also Pinel v. Aurora Loan Services, LLC*, 2011 WL 3843960, *9 (N.D. Cal. Aug. 29, 2011); *Chao v. Aurora Loan Services, LLC*, 2011 WL 6963098, *11 (N.D. Cal. Sept. 12, 2011); *Shaw v. BAC Home Loans Servicing, LP*, WL 805938, *2-3 (S.D. Cal. 2011).  Ocwen can cite no counter-authority on point because it does not exist.

Moreover, any such counter-authority would be contrary to California law as recently articulated in *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 337 (2011).

- 11 -

Ocwen argues that payments on preexisting debt cannot bestow UCL standing because payments on preexisting debt cannot be subject to restitution.[8] In *Kwikset*, however, the California Supreme Court held that "ineligibility for restitution is not a basis for denying standing under section 17204 and disapprove[d] those cases that have concluded otherwise." *Id.*

*Reyes* is on point and illustrative. It involved a three-month forbearance agreement, which the plaintiff sought to enforce or rescind, along with claims under the Rosenthal Act and UCL similar to those made here. *See* 2011 WL 30759, at *2-5. In *Reyes,* the court dismissed the contract and rescission claims, invoking the preexisting debt rule. *See id.* at *16-18. Specifically, analyzing the rescission claim as one for unjust enrichment, *Reyes* held based on the preexisting debt rule that the plaintiffs failed to plead that "Wells Fargo has *unjustly* retained these funds, as required to state a claim." *See id.* at *18 (emphasis in original); *but see Chao v. Aurora Loan Servs.,* 2011 WL 6963098, at *9 (claim for unjust enrichment was stated based on loan workout payments notwithstanding that such payments were applied towards preexisting mortgage debt).

But the *Reyes* court declined to dismiss the UCL claim in the face of the same pre-existing debt argument that Ocwen makes here. The *Reyes* court recognized that "[b]ecause Plaintiffs in this case made payments to Wells Fargo as a result of the business practice that is the subject of their UCL claim, the Court concludes that they have standing to assert such a claim." 2011 WL 30759, at *21. Rejecting the

---

[8] Plaintiff disagrees with this contention, but that argument is not relevant to this motion to dismiss and will be taken up, no doubt, if and when the case proceeds.

- 12 -

arguments against standing, *Reyes* noted that "in the cases on which Wells Fargo relies the plaintiffs 'had not actually lost money or property of any sort.'"  *Id.*

Likewise here, the cases on which Ocwen relies to dispute standing involve, at most, situations where there was no loss of money or property attributable to an alleged UCL violation by the defendant.  None of the cases Ocwen cites even mention the preexisting debt rule.  *De Jose v. EMC Mortg. Corp.,* 2011 WL 1539656 (N.D. Cal. Apr. 18, 2011) does not even concern UCL standing.  There, the court dismissed UCL claims against the current loan servicers because the claims were based solely on alleged misrepresentations by the loan originator.  *See id.* at *11.

The other citations, if slightly more on-point, are no more persuasive.  The court in *Cornejo v. JPMorgan Chase Bank,* 2011 WL 6149246 (C.D. Cal. Dec. 12, 2011), granted a motion to dismiss a vague UCL only complaint *with leave to amend*.  *See id.* at *6.  It gave three reasons, including standing.  *See id.* at *4.  But as to standing, the court found that plaintiffs failed to allege "facts supporting a finding that their alleged injury resulted from defendants' wrongful conduct, and not from plaintiffs' inability to pay their mortgage."  *Id.  Cornejo* does not apply, nor even mention, the preexisting debt rule.

*DeLeon v. Wells Fargo Bank, N.A.,* 2011 WL 311376, *1 (N.D. Cal. Jan. 28, 2011) did not involve any monetary payments whatsoever.  Rather, the plaintiffs alleged that the lender made oral assurances that it would offer them a loan modification and not foreclose in the meantime.  *See id.* at *1, 6. The plaintiffs claimed UCL standing based solely on the foreclosure itself:  that "if they had known that Wells Fargo never intended to complete the loan modification process, they

- 13 -

1    would have instead concentrated their efforts on reinstating the loan prior to the

2    trustee's sale." *Id.* at *7.

3          *DeLeon* noted, however, that as of the date of default the plaintiffs "were

4    $43,927.22 in arrears." *Id.* The court dismissed the UCL claim for lack of standing

5    because "[w]ithout some factual basis suggesting that Plaintiffs could have cured the

6    default in the fall of 2009, the Court cannot reasonably infer that Wells Fargo's

7    alleged misrepresentations resulted in the loss of Plaintiffs' home. Rather, the facts

8    alleged suggest that Plaintiffs lost their home because they became unable to keep up

9    with monthly payments and lacked the financial resources to cure the default." *Id.*

10

11         *Argueta v. J.P. Morgan Chase*, 2011 WL 2619060, *1 (E.D. Cal. June 30,

12   2011) is akin to *DeLeon* because no payments were made. The plaintiffs merely

13   alleged that they *should* have been offered a modification and lost their house to

14   foreclosure as a result. *See id.* The court found no UCL standing because there was

15   no allegation to suggest that the loss of the home to foreclosure was the result of a

16   UCL violation as opposed to the borrowers' failure to pay the mortgage. Ocwen's

17   final case, *Justo v. Indymac Bancorp*, 2010 WL 623715, *4 (C.D. Cal. Feb. 19,

18   2010), involves facts and results virtually identical to *Argueta*.

19

20         Proposition 64 restricted standing because "unscrupulous lawyers … exploited

21   the generous standing requirement of the UCL to file 'shakedown' suits to extort

22   money from small businesses." *Id*. at 316. But the enhanced standing requirement

23   "left entirely unchanged the substantive rules governing business and competitive

24   conduct. Nothing a business might lawfully do before Proposition 64 is unlawful

25   now, and nothing earlier forbidden is now permitted." *Californians For Disability

26   Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (2006).

27

28                                        - 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ocwen offers no applicable legal authority – binding or not – for its theory that the preexisting debt rule vitiates UCL standing.  None exists.  The salient fact that confers standing here is that Ocwen used deceptive practices to induce Plaintiff to send money he would not otherwise have sent.  *See* FAC, ¶ 18.  Standing is consistent with – and required by – the purpose of the UCL, "to protect California's consumers against unfair business practices," and ensure "that wrongdoers not retain the benefits of their misconduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009).

### 2.  Plaintiff states claims under the UCL

#### a.   Plaintiff states a claim for unlawful practices based on the Rosenthal Act violation

Because Ocwen violated the Rosenthal Act, it consequently violated the unlawful prong of the UCL.  The FAC no doubt pleads a violation.  The Rosenthal Act's standard of "deception" is quite low:  whether the "least sophisticated debtor" would be deceived.  *See Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007); *Terran v. Kaplan,* 109 F.3d 1428, 1431-32 (9th Cir. 1997); *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1171 (9th Cir. 2006).  The Offer Letter must be assessed in terms of "the impression likely to be left upon the unsophisticated consumer."  *See Catherman v. Credit Bureau of Greater Harrisburg,* 634 F. Supp. 693, 695 (E.D. Pa. 1986).  Because the Offer Letter is certainly misleading to the "least sophisticated debtor," Plaintiff states a UCL claim for unlawful business practices predicated on the Rosenthal Act violation.

- 15 -

1

### b. Plaintiff states a claim for fraudulent practices

2

3       To state a claim for "fraudulent" business practice under the UCL "it is

4   necessary only to show that members of the public are likely to be deceived."  *In re*

5   *Tobacco II Cases*, 46 Cal. 4th at 312.  The same facts that establish the Rosenthal

6   Act violation, as set forth above, also state a claim for UCL fraudulent practices.

7           The fraudulent business practice prong of the UCL has
            been understood to be distinct from common law fraud. "A
8           [common law] fraudulent deception must be actually false,
            known to be false by the perpetrator and reasonably relied
9           upon by a victim who incurs damages. None of these
            elements are required to state a claim for injunctive relief"
10          under the UCL.  This distinction reflects the UCL's focus
            on the defendant's conduct, rather than the plaintiff's
11          damages, in service of the statute's larger purpose of
            protecting the general public against unscrupulous business
12          practices.

13

14

15  *Id.* (citations omitted).  Because the public and Plaintiff could easily (and did)

16  interpret the Offer Letter as promising a loan modification upon satisfaction of the

17  trial period, the fraudulent practice standard is satisfied.

18      Plaintiff's allegations are sufficiently precise to satisfy Fed. R. Civ. P. 9(b)

19  because the statements that are alleged to be misleading are contained in the Offer

20  Letter that is not only identified but also attached to Plaintiff's complaint.  "Thus, the

21  when, where, and how of Plaintiff's claim are clearly identified."  *See Reyes*, 2011

22  WL 30759, at *20-21.  That is all that is required.  *See Kearns v. Ford Motor Co.*,

23  567 F.3d 1120, 1124 (9th Cir. 2009).

24

25      Ocwen's Rule 9(b) argument deliberately misunderstands the rule.  The Offer

26  Letter attached to the FAC was misleading because it misrepresented the conditions

27  under which Plaintiff would be entitled to a permanent HAMP loan modification.

28

- 16 -

The who, what, where, when and how of Plaintiff's claim based on the Offer Letter are all thus clearly set forth in the FAC merely by virtue of the fact that the Offer Letter is attached.  Events that occurred after Plaintiff's receipt and reliance on the letter have no bearing on the elements of the claim that must be particularly pleaded. Ocwen knows exactly the communication that Plaintiff contends was fraudulent and why it was so, it has all the information necessary to properly mount its defense.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (holding the primary purpose of Rule 9(b) is to provide defendant with enough concrete detail to enable it to prepare an adequate answer and not simply offer a general denial).

### c.      Plaintiff states a claim for unfair practices

Although the gravamen of the UCL claim is that Plaintiff made payments to Ocwen as a result of fraudulent and unlawful business practices, these same allegations also state a UCL claim for unfair business practices.  Under the UCL, a business act or practice is "unfair" when it "offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the "gravity of the harm to the victim outweighs the utility of the defendant's conduct."  *Bardin v. Daimler Chrysler Corp.,* 136 Cal. App. 4th 1255, 1268-1269 (2006).  "To sufficiently plead an action based on an 'unfair' business act or practice, a plaintiff must allege facts showing the 'unfair' nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have."  *VP Racing Fuels, Inc. v. General Petroleum Corp.,* 673 F. Supp. 2d 1073, 1087 (E.D. Cal. 2009).

Plaintiff has sufficiently alleged facts showing that Ocwen's conduct offends public policy and that Plaintiff was harmed.  Ocwen engaged in "unfair" business

- 17 -

1  practices under the UCL because it violated the laws and underlying legislative

2  policies designed to (a) prevent foreclosure, where possible, by requiring mortgage

3  holders to engage in honest and good faith foreclosure prevention efforts (*see* Cal.

4  Civil Code § 2923.5, HAMP enabling legislation); and (b) provide Californians with

5  anti-deficiency protections that prevent mortgage holders from seizing other assets or

6  monies of the borrowers after electing to sell the security in satisfaction of the

7  mortgage debt (*see* C.C.P. § 580d, § 726).  Because Ocwen allegedly used

8  misleading mortgage modification Offer Letters to obtain additional money from

9  delinquent home mortgage borrowers before foreclosing on them, the FAC states a

10  *prima facie* case of unfair business practices. Whether the social utility of Ocwen's

11  conduct outweighs the harm to the public is a question of fact to be determined at a

12

13  later date.

14

## IV.   CONCLUSION

15

16  For the reasons set forth above, Plaintiff respectfully requests that the Court

17  deny Ocwen's motion to dismiss under Fed. R. Civ. P. 12 in its entirety.  To the

18  extent the Court dismisses any claim, Plaintiff requests the opportunity to amend the

19  FAC to cure the deficiency.

20

21  Dated:    March 12, 2012              Respectfully submitted,

22                                        By:  /s/ Thomas E. Loeser

23                                           Steve W. Berman
                                             Thomas E. Loeser (Cal. Bar No. 202724)

24                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1918 Eighth Avenue, Suite 3300

25                                        Seattle, WA 98101
                                          Telephone:  (206) 623-7292

26                                        Facsimile:  (206) 623-0594
                                          steve@hbsslaw.com

27                                        toml@hbsslaw.com

28

- 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF PETER FREDMAN
Peter B. Fredman (Cal. Bar No. 189097)
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile:  (510) 868-2627
peter@peterfredmanlaw.com

*Attorneys for Plaintiff*

- 19 -

1

## **PROOF OF SERVICE**

2

      I hereby certify that a true copy of the above document was served upon the

3

attorney of record for each other party through the Court's electronic filing service

4

on March 12, 2012.

5

6

7

           /s/ Thomas E. Loeser
           Thomas E. Loeser

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -